IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| WENDY TEAGUE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 5:14-CV-265-LSC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.  Introduction**

The plaintiff, Wendy F. Teague, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Ms. Teague timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Teague was forty years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has an eighth grade education. (Tr. at 117, 147.) Her past work experiences include employment as a short order cook and a

housekeeper. (Tr. at 54, 147.) Ms. Teague claims that she became disabled on December 31, 2010, due to asthma, anxiety, and back pain. (Tr. at 24.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for SSI.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA").  *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the plaintiff is engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments.  *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The decision depends on the medical evidence contained in the record.  *See Hart v.*

*Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the steps, the ALJ first determined that Ms. Teague has not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. at 20.) According to the ALJ, Plaintiff's degenerative disc disease, asthma, and anxiety are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 20-1.) The ALJ did not find Ms. Teague's allegations to be totally credible, and he determined that she has the RFC to perform light work with the following additional limitations: no more than occasional climbing of ramps and stairs, but frequent balancing, stooping, kneeling, crouching, and crawling; she should avoid temperature extremes, such as extreme heat or extreme cold; she should avoid exposure to unprotected heights; she should avoid concentrated

exposure to pulmonary irritants, such as dust, gas, fumes, odors, and the like; she is limited to unskilled work; and she is limited to only occasional interactions with the public. (Tr. at 22.)

According to the ALJ, Ms. Teague is unable to perform any of her past relevant work, she is a "younger individual," and she has a "limited education," as those terms are defined by the regulations. (Tr. at 27.) He determined that "transferability of skills is not an issue in this case because the claimant's past relevant work is unskilled." (*Id.*) The ALJ used Medical-Vocation Rule 201.25 as a guideline for finding that there are a significant number of jobs in the national economy that she is capable of performing, such as production packer, garment folder, and photo finisher. (Tr. at 27.) The ALJ concluded his findings by stating that Plaintiff was "not under a 'disability,' as defined in the Social Security Act, since March 16, 2011, the date the application was filed." (Tr. at 28.)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v.*

*Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v.*

*Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Ms. Teague alleges that the ALJ's decision should be reversed and remanded because the ALJ erred in giving little weight to the opinion of the one-time consultative examiner. (Doc. 11 at 6.) As a corollary to that argument, she also argues that the ALJ failed to fully develop the record by failing to re-contact the consultative examiner for clarification of his opinion. (Doc. 11 at 8.) The plaintiff also argues in passing that the ALJ's hypothetical posed to the vocational expert was incomplete, so that argument will be addressed as well.

### A. Medical Opinion Evidence

Plaintiff contends that the ALJ improperly rejected Dr. Haney's psychological consultative examination. (Doc. 11 at 9.) Dr. Haney performed a one-time clinical interview with Ms. Teague on June 21, 2011. (Tr. at 256-57.) Dr. Haney recorded Ms. Teague's reported physical problems, including: "ruptured discs in her neck, other bulging discs, arthritis, asthma, migraine headaches, carpal tunnel, depression, panic attacks, and back pain." (Tr. at 256.) Dr. Haney further noted that Ms. Teague exhibited non-psychotic symptoms, but that she did admit

7

to feeling depressed, which she attributed to her physical problems and financial stress. (*Id.*) Dr. Haney found that Ms. Teague mostly stays home, does light household chores, and watches television. (Tr. at 257.) Dr. Haney concluded that Ms. Teague's "ability to function in most jobs appeared moderately to severely impaired due to physical, emotional[,] and vocational limitations." (*Id.*) The ALJ rejected Dr. Haney's conclusion regarding Ms. Teague's ability to function in most jobs and instead considered the assessments of other physicians as well as Dr. Haney's assessment to conclude that there were jobs that exist in significant numbers in the national economy that Ms. Teague can perform. (Tr. at 25-27.)

Consultative opinions from non-treating physicians, such as the opinion given by Dr. Haney, are not entitled to the same controlling weight accorded to treating source opinions. *See* 20 C.F.R. §416.927(c)(2); *Wilson v. Heckler*, 734 F.2d, 513, 518 (11th Cir. 1984). Instead, the ALJ weighs non-controlling medical opinions in light of: (1) the length and frequency of the treatment or examination, (2) the nature and extent of the relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, and (5) the specialization of the source. *See* 20 C.F.R. § 416.927(c). "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Syrock v. Heckler*, 764 F. 2d 834, 835 (11th Cir. 1985). The application

of the above factors may result in the ALJ according the greatest weight to the opinion of a non-examining source. *Wilkinson v. Comm'r of Soc. Sec.*, 289 F. App'x 384, 386 (11th Cir. 2008) (finding ALJ properly accorded greater weight to non-examining state agency physician where the examining physician's opinion was not supported by the evidence).

There is substantial evidence in the record as a whole to support the ALJ's use of the above factors to discredit Dr. Haney's opinion. First, Dr. Haney is a psychologist, and the ALJ correctly found that he had no basis, justification, or expertise in evaluating Ms. Teague's physical or vocational limitations. (Tr. at 25.) A specialist's opinion about medical issues is given weight when the opinion and issues are related to his or her specialty. 20 C.F.R. § 416.927(c)(5). Substantial evidence thus supports the ALJ's decision to reject Dr. Haney's physical and vocational limitations. The ALJ instead relied on medical records and findings from Ms. Teague's primary care physician, orthopedist, and pain management specialists regarding her physical limitations (tr. at 53-59, 24-25), and he relied on Anne Darnell, a qualified vocational expert, for vocational expertise. (Tr. at 53-59.)

Second, with regard to Dr. Haney's opinion concerning Plaintiff's psychological limitations, the doctor did not assess any specific functional, work-related limitations, but merely concluded that Plaintiff's "ability to function in

9

most jobs appeared moderately to severely impaired." (Tr. at 257.) Whether a claimant is disabled or unable to work is not a medical opinion but is an issue reserved to the Commissioner as an administrative finding. *See* 20 C.F.R. § 416.927(d)(1). The Court is interested in the doctor's evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Because Dr. Haney's opinion regarding Ms. Teague's ability to function in most jobs was a determination reserved for the ALJ, the ALJ properly gave this statement of Dr. Haney's "little weight", and instead relied on the RFC assessment completed by the state agency psychologist, Dr. Dobbs. (Tr. at 26.) In contrast to Dr. Haney's conclusory statement, Dr. Dobbs, a psychologist who reviewed a majority of the medical evidence of record, identified specific, mental limitations supported by the record. (Tr. at 274.) Consistent with the ALJ's RFC finding, Dr. Dobbs opined Plaintiff (1) was able to understand and remember simple and detailed but not complex instructions; (2) could sustain attention and concentration for two-hour periods to complete simple tasks during a regular workday at an acceptable pace and attendance schedule; (3) had no significant problems in social interaction; and (4) had no significant problems adapting within a work setting. (*Id.*) The ALJ appropriately accorded Dr. Haney's opinion "little

weight" (Tr. 25), and instead gave great weight to Dr. Dobbs' opinion. (Tr. at 26). Substantial evidence supports the ALJ's decision to give these determinations weight, because Dr. Dobbs reviewed the majority of the medical evidence on the record and identified specific limitations supported by the record. (Tr. at 274.)

Third, the ALJ correctly noted that Dr. Haney's opinion lacked support in the record. *See* 20 C.F.R. § 416.927(c)(3). Dr. Haney's own report failed to support his extreme opinion. (Tr. at 256-57.) Dr. Haney observed Plaintiff was polite and cooperative, had an intact recent and remote memory, and despite a "somewhat" anxious and sad mood, exhibited logical and goal-directed conversation. (Tr. at 256.) Although Dr. Haney believed Plaintiff was moderately to severely limited in her ability to work, the ALJ noted Plaintiff had no psychiatric hospitalizations or outpatient mental health treatment and never sought treatment from a mental health specialist. (Tr. at 25-26, 156, 256.) Further, the ALJ observed that no treating source opined that Plaintiff was disabled. (Tr. at 26.) Although Plaintiff obtained medications from her primary care physician and was diagnosed with panic disorder, she did not consistently report mental health problems such as anxiety attacks or depression, and her treating physicians did not indicate any significant mental health limitations. (Tr. at 26, 235-36, 290-91, 293, 295-96, 303-06, 314-20, 323.) These records better support the opinion of Dr. Dobbs, who

indicated mental restrictions that would not preclude Plaintiff's performance of other work in the national economy.

Additionally, Plaintiff's own statements about her limitations similarly support Dr. Dobbs' opinion over Dr. Haney's. Plaintiff reported no problems with concentration, memory, understanding, following instructions, or getting along with others, including authority figures. (Tr. at 182-83). Indeed, Plaintiff reported she can pay attention as "long as needed" and has no problems reading. (Tr. at 182). Plaintiff cares for her children and gets them ready for school (tr. at 157-58, 177-78), shops for groceries (tr. at 160, 180), and pays bills and handles money. (Tr. at 160, 180).

Accordingly, substantial evidence supports the ALJ's decision to accord greater weight to Dr. Dobbs' opinion than to Dr. Haney's. The ALJ properly disregarded Dr. Haney's conclusion regarding Ms. Teague's ability to work, and instead made his decision after assessing all of the facts on the record. The ALJ did not discount all of Dr. Haney's findings, and instead only fully disregarded Dr. Haney's opinion regarding Ms. Teague's ability to function in most jobs. (Tr. at 25.)

**B. Duty to Further Develop the Record**

Ms. Teague further contends that the ALJ erred in failing to further develop the record pursuant to 20 C.F.R. § 416.927. Ms. Teague argues that the ALJ could have re-contacted Dr. Haney to seek clarification of his opinion pursuant to 20 C.F.R. § 416.912(e)(1). (Doc. 11 at 9.)

Although social security hearings are inquisitorial, not adversarial in nature, claimants must establish they are eligible for benefits. *See* 20 C.F.R. § 416.912(a), (c); *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007). The ALJ has a duty to develop the record where appropriate but need not engage in further development where the record contains sufficient evidence for the judge to make an informed decision. *Id.* In keeping with this theme, the regulations provide that if a consultative examination report is inadequate or incomplete, the agency will re-contact a medical source who performed the consultative examination and ask for the missing information or preparation of a revised report. *See* 20 C.F.R. § 416.919p. Importantly, however, the regulation does not state that the agency will re-contact a consultative examiner simply because the examiner's report is inconsistent with other evidence in the record. *See* 20 C.F.R. § 416.919p. Instead, the regulations provide "[i]f any of the evidence in your case record, including any medical opinion(s), is inconsistent, we will weigh the relevant evidence and see whether we can determine whether you are disabled based on the evidence we

have." 20 C.F.R. § 416.920b(b). If a consultative examination report does not include a statement about what a claimant can still do despite the impairments, "the absence of such a statement . . . will not make the report incomplete." *Id.* § 416.919(c)(6).

Here, there was sufficient evidence on the record for the ALJ to make a determination and no additional duty to develop the record by re-contacting Dr. Haney existed. *See Robinson v. Astrue*, 265 F. App'x 993, 999 (11th Cir. 2010) (rejecting the claimant's argument that the ALJ erred by not re-contacting her doctors where there was already sufficient information for determining the claimant's impairments, RFC, and ability to work); *Gallina v. Comm'r of Soc. Sec.*, 202 F. App'x 387 (11th Cir. 2006) (finding that the ALJ does not err unless the development of the record results in evidentiary gaps which result in unfairness and clear prejudice). There was a significant amount of information on the record regarding Ms. Teague's mental ailments, and there are no evidentiary gaps in the record which result in unfairness and clear prejudice against Ms. Teague. For example, the ALJ had the well-supported opinion of Dr. Dobbs, who provided a clear assessment of Plaintiff's mental limitations. (Tr. at 274.)

While Ms. Teague alleges that there is an "inconsistency" in the record which must be resolved pursuant to 20 C.F.R. § 416.912(e)(1), no such

inconsistency exists. Dr. Haney's determination regarding Ms. Teague's capacity to work, which was an impermissible legal conclusion reserved for the Commissioner, is the only "inconsistency" on the record. The ALJ has no duty to further clarify an opinion such as Dr. Haney's that bears no legal significance. Instead, because the record was sufficient and shows no clear prejudice, the ALJ had no duty to develop the record further.

### C. Hypothetical Posed to the Vocational Expert

Ms. Teague argues in passing that the ALJ's hypothetical to the vocational expert ("VE") was incomplete because the hypothetical did not include sufficient information about her mental abilities. (Doc. 11 at 7.) Ms. Teague takes issue with the fact that the ALJ's hypothetical to the VE does not identify any of the possible limitations listed in 20 C.F.R. § 404.1545(c) except social functioning in the context of interaction with the public. (*Id.*) Section 404.1545(c) describes how the agency assesses a claimant's mental abilities in assessing one's RFC, and provides, "A limited ability to carry out certain mental activities, such as limitations on understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work." *Id.* Plaintiff's contention is

unfounded, as the hypothetical question that the ALJ posed to the VE accurately portrayed Ms. Teague's RFC and included her relevant conditions and limitations.

As noted previously, the fifth step of the Commissioner's 20 C.F.R. § 416.912(a) evaluation process requires that the ALJ determine whether the claimant has the ability to adjust to other work in the national economy. There are two avenues by which the ALJ may make this determination; either by applying the Medical Vocational Guidelines or by using a VE. *Phillips v. Barnhart,* 357 F.3d 1232, 1239-1240 (11th Cir. 2004). VE testimony is the preferred method for introducing independent evidence of the existence of jobs in the national economy that the claimant can perform. *Wilson v. Barnhart,* 284 F.3d 1219, 1227 (11th Cir. 2002). "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* While this is the case, an ALJ is "not required to include findings in the hypothetical that the ALJ [has] properly rejected as unsupported." *Crawford,* 363 F.3d at 1161.

With regard to Plaintiff's mental limitations, the ALJ's RFC assessment restricted Plaintiff to only occasional interaction with the public. Under the foregoing precedent, the ALJ did not err in not including more restrictive mental limitations because the medical evidence of record did not support them. As noted

previously, the ALJ did not err in giving little weight to Dr. Haney's opinion, and the well-supported opinion of Dr. Dobbs supported the ALJ's assessment of Plaintiff's mental limitations. An ALJ may reject the opinion of any physician when the record supports a contrary conclusion, and the resolution of conflicting evidence is the function of the ALJ, not the Court. *Sryock,* 764 F.2d at 835; *Graham v. Bowen,* 790 F.2d 1572, 1575 (11th Cir. 1986). When the ALJ poses a hypothetical consistent with an RFC that is supported by substantial evidence, the ALJ does not err in posing that hypothetical. *Bouie v. Astrue*, 226 F. App'x 892, 895 (11th Cir. 2007).

### IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Teague's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON MARCH 24, 2015.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
160704